People v Sindoni (2019 NY Slip Op 08731)





People v Sindoni


2019 NY Slip Op 08731


Decided on December 5, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 5, 2019

109547

[*1]The People of the State of New York, Respondent,
v
Joseph G. Sindoni, Appellant.

Calendar Date: October 17, 2019

Before: Garry, P.J., Clark, Mulvey, Aarons and Pritzker, JJ.


John R. Trice, Elmira, for appellant.
Joseph G. Fazzary, District Attorney, Watkins Glen (John C. Tunney of counsel), for respondent.


Garry, P.J.
Appeal from a judgment of the County Court of Schuyler County (Morris, J.), rendered April 27, 2017, upon a verdict convicting defendant of the crimes of burglary in the second degree, grand larceny in the third degree, criminal mischief in the third degree and unauthorized use of a vehicle in the first degree.
Defendant was charged with burglary in the second degree, grand larceny in the third degree, criminal mischief in the third degree and unauthorized use of a vehicle in the first degree, which all stemmed from the June 2015 burglary of a Schuyler County home. Following a jury trial, he was convicted as charged. County Court sentenced defendant as a second violent felony offender to a prison term of 13½ years for the burglary conviction, followed by 10 years of postrelease supervision, and to lesser concurrent terms on the remaining convictions. Defendant appeals.
Defendant argues that the verdict is against the weight of the evidence, primarily relying upon the victim's failure to mention defendant's visible and distinguishing features, including several tattoos, a brand-type mark on his leg, and a ponytail. At trial, the victim testified that she arrived home in the afternoon and found a truck with dual rear wheels on each side parked in her driveway. As she approached her house, she noticed a window casing resting on her porch and saw damage to her front door. She called 911 for emergency assistance and, while she was on the call, a man carrying a "sack" ran alongside the house toward the truck, made eye contact with the victim, entered the truck and drove off. The victim testified that, in total, she viewed the man for 30 to 45 seconds, saw his face, back and side profile and, at one point, was two to three feet from the man, causing her to reach out and nearly touch him.
Approximately one week after the burglary, a Tioga County resident found a pillowcase containing various items in his backyard and turned it over to law enforcement. The resident's backyard abutted a mobile home park where defendant's relative lived at the time of the commission of the crimes. Coworkers and other relatives testified that defendant was known to spend time at this mobile home park. The pillowcase and its contents were determined to be various items taken from the victim's home. The pillowcase also contained a pair of used gloves. Testing revealed that defendant was a major contributor of DNA found in these gloves. The victim testified that she did not keep gloves of that kind in her home, and an owner of the business that employed defendant testified that similar gloves were used in the business and made available to the employees. At trial, the victim identified defendant as the man she saw at her home. She described what he was wearing at that time in detail. She described the man's face at the time of the crime as "drawn and thinner" with a "little scruff, beard," as if he had not shaved in a few days. On cross-examination, the victim stated that she could not see the man's hair due to the backwards baseball cap he was wearing, and that she did not notice any other features, such as tattoos or a brand-type burn mark. Coworkers and relatives of defendant testified and described his appearance at the time the crimes were committed, noting that defendant had tattoos on his forearms and lower leg, a brand-type mark on his leg, and a long ponytail.
Following the incident, a lieutenant with the Schulyer County Sheriff's Department provided the victim with a "six-pack," that is, an array of six photos of possible perpetrators. This lieutenant testified that the victim eliminated all but two of the photos, and stated that she was leaning toward the photo of defendant. The victim provided a partial license plate of the truck; this truck was later recovered in a nature preserve approximately two miles from where the pillowcase had been found. The truck was determined to be registered to defendant's employer. The lieutenant thereafter questioned the owners and employees of the business, but he did not speak to defendant, as defendant did not return to work after the crimes were committed. The lieutenant further testified that he focused his investigation on employees, as there was no evidence suggesting that the truck was taken by an individual without access to the business facility. One of the business owners indicated that the facility's combination locks were changed when employees were fired or otherwise terminated, but, upon cross-examination, admitted that he could not recall when the locks were last changed prior to the crimes, and that an employee could easily tell a nonemployee the combinations. One of the business owners testified that defendant did not have permission to use the employer's vehicles, as he did not have a driver's license.
Defendant showcased his tattoos and the brand-type burn mark to the jury, presented witness testimony as to the visibility of his features at the time the crimes were committed, and provided alibi evidence. The alibi evidence by defendant's witnesses provided imprecise descriptions of defendant's activities and locations on the day the crimes were committed, and their testimony was, in part, contradicted by other physical evidence presented at trial.
The inconsistencies in the testimony as to defendant's description, together with the alibi evidence, presented "credibility issues for the trier of fact to determine" (People v Wilson, 71 AD3d 1333, 1334 [2010]; see People v Douglas, 57 AD3d 1105, 1106 [2008], lv denied 12 NY3d 783 [2009]). Had the jury credited defendant's arguments and this evidence, a different verdict would not have been unreasonable (see People v Newman, 169 AD3d 1157, 1160 [2019]; People v Winchell, 46 AD3d 1096, 1097 [2007], lv denied 10 NY3d 818 [2008]). As such, "[this Court] must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; see People v Stover, 174 AD3d 1150, 1153 [2019], lv denied 34 NY3d 954 [2019]; People v Robinson, 156 AD3d 1123, 1125 [2017], lv denied 30 NY3d 1119 [2018]). Viewing all of the evidence in a neutral light and giving deference to the credibility determinations made by the jury — including the victim's identification of the defendant during the photo array and at trial, witness testimony describing defendant's features at the time the crimes were committed, the DNA evidence recovered from the gloves, witness testimony as to defendant's alibi, and the employer's testimony as to access to the truck and the facility where its keys were stored — we do not find that the verdict was against the weight of evidence (see People v Taylor, 163 AD3d 1275, 1277 [2018], lv denied 32 NY3d 1068 [2018]; People v Zeller, 151 AD3d 1272, 1274-1275 [2017]; People v Cooley, 149 AD3d 1268, 1270 [2017], lv denied 30 NY3d 979 [2017]).
Clark, Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.